UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARLENE SHEILS, | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| GATEHOUSE MEDIA, INC.; GATEHOUSE MEDIA SUBURBAN NEWSPAPERS, INC.; and SHAW SUBURBAN MEDIA GROUP, INC., | ) Case No. 1:12-cv-02766 ) ) Judge John W. Darrah ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Darlene Sheils, filed a Complaint against Defendants GateHouse Media, Inc. ("GateHouse Media") and GateHouse Media Suburban Newspapers, Inc. ("GateHouse Suburban" and, together with GateHouse Media, "GateHouse Defendants") on April 16, 2012, alleging five counts: unlawful conduct and retaliation in violation of the Family and Medical Leave Act (Counts I and II); violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Count III); violation of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (Count IV); and retaliatory discharge in violation of Illinois common law (Count V). Plaintiff amended her Complaint on March 14, 2013, to add Defendant Shaw Suburban Media Group, Inc. ("Shaw") as a successor to GateHouse Suburban. (Am. Compl. ¶ 15.)

Shaw moved for summary judgment on May 10, 2013, claiming successor liability should not be imposed upon it. The Motion has been fully briefed.

### BACKGROUND

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue . . . ."

Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny each factual statement proffered by the moving party and concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Failure to dispute any facts in an opponent's statement in the manner dictated by Local Rule 56.1 deems those facts admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Local Rule 56.1(b)(3)(C) further permits the non-movant to submit a statement "of any additional facts that require the denial of summary judgment . . . ."

To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

The following facts[1] are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff alleges she worked for the GateHouse Defendants[2] and their predecessors from November 1993 until her termination in February 2011. (*Id.* ¶ 1.) GateHouse Suburban, based in Downers Grove, Illinois, is a group of twenty-two weekly newspapers in Chicago's western suburbs; Plaintiff was working at the Downers Grove

---

[1] Admitted Statements of Material Facts by Shaw are designated as "Def.'s SOF," with the corresponding paragraph referenced; Plaintiff's Additional Admitted Statements of Material Facts are designated as "Pl.'s SOF," with the corresponding paragraph referenced.

[2] Although Plaintiff alleges the GateHouse Defendants together controlled the terms and conditions of her employment and were her employers, jointly and individually, the parties agree that GateHouse Media's status as Plaintiff's employer, either jointly or individually, is a disputed issue of material fact. (Pl.'s SOF ¶ 2.)

location when she was terminated. (Def.'s SOF ¶ 5.) GateHouse Media, headquartered in Fairport, New York, is a national publishing company that operates locally based print and online media. (*Id.* ¶ 6.) Alternative to GateHouse Media's disputed status as Plaintiff's employer, GateHouse Media accepts successor liability for any liability incurred by GateHouse Suburban in this matter. (*Id.*)

*Plaintiff's Allegations Against GateHouse Defendants*

Plaintiff underwent surgery in early 2011 and took time off work on FMLA leave to recover. (Pl.'s SOF ¶ 3.) While on FMLA leave, Plaintiff's manager, Carol Gilbert, notified Plaintiff that her department "was undergoing a 'reorganization' and that all current employees in the department had to apply for nine available positions." (*Id.*) Accordingly, Plaintiff applied for two positions, Senior Production Coordinator and Ad Traffic Coordinator, but was not selected for either position. (*Id.* ¶¶ 4-5.) After the departmental reorganization and while still on FMLA leave, Plaintiff was fired on February 17, 2011. (*Id.* ¶ 6.) Plaintiff alleges the firing interfered with and was in retaliation for her exercising her rights under the FMLA and the Illinois Workers' Compensation Act. (*Id.*) Additionally, Plaintiff claims she was denied overtime compensation in violation of the FLSA and the IMWL. (*Id.*)

*Shaw's Acquisition of GateHouse Suburban*

On October 1, 2012, Shaw acquired GateHouse Suburban from GateHouse Media in an asset purchase that did not include GateHouse Suburban's liabilities. (Def.'s SOF ¶¶ 7-8.) Shaw paid GateHouse Media directly, which retained the proceeds of the sale. (*Id.* ¶ 8.) Pursuant to Shaw's acquisition of GateHouse Suburban, Plaintiff added Shaw as a defendant only under the theory of successor liability and "does not contend Shaw personally undertook or was involved in any of GateHouse Suburban's alleged improper conduct." (*Id.* ¶ 7.) Shaw was aware of

3

Plaintiff's initial Complaint filed against the GateHouse Defendants when it acquired GateHouse Suburban. (*Id.* ¶ 9.) After purchasing GateHouse Suburban, Shaw substantially continued GateHouse Suburban's business operations, including hiring seventy-two of GateHouse Suburban's employees. (*Id.*; Pl.'s SOF ¶ 8.) One of the GateHouse Suburban employees hired by Shaw was Lynn Adamo, who was selected over Plaintiff for the Senior Production Coordinator position during Plaintiff's former department's reorganization. (Pl.'s SOF ¶¶ 5, 8.)

Because Shaw purchased all of GateHouse Suburban's assets, GateHouse Suburban is not capable of satisfying any judgment rendered against it. (Def.'s SOF ¶ 11.) GateHouse Media, however, possesses assets, newspaper properties, and employment opportunities akin to Plaintiff's former position. (*Id.*) Specifically, GateHouse Media currently employs half of the members of Plaintiff's department "who survived the 2011 reduction in force." (*Id.*) While GateHouse Media has not and is not attempting to escape its own liability, it agreed to indemnify Shaw "for all claims against Shaw arising prior to and out of the acquisition [of GateHouse Suburban] . . . [and] for all fees, costs, and damages Shaw incurs." (*Id.* ¶ 10.)

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v.*

*Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court views the evidence in a light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Shaw moves for summary judgment on the issue of its potential successor liability for the alleged misconduct by the GateHouse Defendants. Shaw argues that no genuine issues of material fact exist and that, as an innocent purchaser, Shaw should not be dragged into this litigation when GateHouse Media, a true party in interest, is the proper party to provide any relief to Plaintiff.

*The Doctrine of Successor Liability*

When one company purchases the assets of another company, deciding "whether or not [the purchaser] acquires [the seller's liabilities] is the issue of successor liability." *Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013). The standard followed in most American jurisdictions is the purchaser "does not assume the seller's liabilities

5

'even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern.'" *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 862 (N.D. Ill. 2010) (quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747 (7th Cir. 1994)). However, in instances involving alleged violations of federal labor or employment statutes, such as the FMLA or the FLSA in this action, "courts relax the doctrine somewhat," *Trustees of Chi. Plastering Inst. Pension Trust v. Elite Plastering Co.*, 603 F. Supp. 2d 1143, 1148 (N.D. Ill. 2009) (citations omitted); and "a federal common law standard of successor liability is applied that is more favorable to plaintiffs . . . ." *Teed*, 711 F.3d at 764.

To succeed, Shaw must show that there is no factual dispute that the underlying purpose for applying successor liability is not present in this case. The emphasis is on protecting the rights of employees, and the Seventh Circuit has "found the imposition of successor liability to be appropriate in those cases where the vindication of an important federal statutory policy has necessitated the creation of an exception to the common law rule," *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327 (7th Cir. 1990), whereas "workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them." *Teed*, 711 F.3d at 766. Thus, successor liability is favored if it enables Plaintiff to vindicate her rights under the FMLA and the FLSA. Successor liability may be appropriate depending on the following questions of fact: (1) the successor had notice of the lawsuit against the predecessor; (2) the predecessor could have provided the relief sought before the sale; (3) the predecessor could provide the relief sought after the sale; (4) the successor can provide the relief sought; and (5) there is substantial continuity between the business operations of the predecessor and the successor. *Id.* at 765-66. These factors are not strict elements, for "in light of the difficulty of the successorship question,

the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *Chi. Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (quoting *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 256 (1974)).

*Genuine Issues of Material Fact as to Shaw's Successor Liability*

Although the successor liability factors outlined in *Teed* are not necessarily dispositive, Shaw "does not dispute the successorship elements . . . are met here." (Def.'s Reply at 2.) This admission is corroborated by the admitted statements of facts from the parties. (*See* Def.'s SOF ¶ 9, "Defendants do not dispute Shaw was aware of Sheils' lawsuit at the time of the acquisition. . . . Shaw does not dispute that they substantially continued the prior business operations of GateHouse Suburban"; *Id.* ¶ 11, "GateHouse Suburban no longer possesses assets to satisfy any judgment . . . ."). Shaw's admissions strongly undermine its motion and create genuine issues of material fact in this case. As the Seventh Circuit has explained, "[w]hen the successor company knows about its predecessor's liability, knows the precise extent of that liability, and knows that the predecessor itself would not be able to pay a judgment obtained against it, the presumption should be in favor of successor liability." *Worth v. Tyer*, 276 F.3d 249, 261 (7th Cir. 2001) (quoting *EEOC v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988); *see also Laborers' Pension Fund v. Lay-Com, Inc.,* 455 F.Supp.2d 773, 781 (N.D. Ill. 2006) ("[s]uccessor liability applies when there is substantial continuity in the operation of business and the successor had notice of the claim against the predecessor"), *rev'd on other grounds*, 580 F.3d 602 (7th Cir. 2009).

Despite its admission of facts, Shaw argues that it is an innocent purchaser who was not an actor in the alleged improper conduct. The Seventh Circuit has recognized that it is "grossly

7

unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser . . . when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985). However, in this case, Shaw has not demonstrated, for purposes of summary judgment, that inequity or unfairness would result from the imposition of successive liability; rather, Shaw negotiated with GateHouse Media regarding the asset purchase of GateHouse Suburban such that GateHouse Media would "contractually indemnify[] and will continue to indemnify Shaw for all fees, costs, and damages Shaw incurs." (Def.'s SOF ¶ 10.) Therefore, as Plaintiff notes, Shaw's remedy for successor liability is already in place in the form of the indemnification agreement it negotiated with GateHouse Media. Shaw also argues that GateHouse Media is the true defendant to Plaintiff's claims and points to GateHouse Media's status as a successor to GateHouse Suburban. (Def.'s SOF ¶ 6.) However, Shaw cites no authority or facts that because GateHouse Media may be a successor, Shaw should be released.

Summary judgment is improper where genuine disputes of material facts exist, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Shaw has failed to carry its burden to show that there is no genuine issue of material fact as to successor liability. Therefore, summary judgment must be denied.

## CONCLUSION

Shaw has failed to demonstrate that no genuine issue of material fact exists regarding its successor liability. Therefore, in light of the foregoing analysis, Defendant's Motion for Summary Judgment [36] is denied.

Date: September 19, 2013

JOHN W. DARRAH
United States District Court Judge