# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE SHEILS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 CV 2766 |
| | ) | |
| v. | ) | Judge Shah |
| | ) | |
| GATEHOUSE MEDIA, INC., | ) | Jury Trial Demanded |
| GATEHOUSE MEDIA SUBURBAN | ) | |
| NEWSPAPERS, INC., and SHAW | ) | |
| SUBURBAN MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT
### AGAINST SHAW SUBURBAN MEDIA GROUP, INC.
### UNDER THEORY OF SUCCESSOR LIABILITY

Plaintiff, through her attorneys, Pedersen & Weinstein LLP, respectfully requests this Court to enter judgment in her favor against Shaw Suburban Media Group, Inc. ("Shaw") under the theory of successor liability and in support, states as follows.

**I.     Procedural History**

On May 10, 2013, Shaw moved for summary judgment, claiming it was not an appropriate defendant under the theory of successor liability. On September 19, 2013, Judge Darrah denied Shaw's motion, finding that it "failed to carry its burden to show that there is no genuine issue of material fact as to successor liability." (Memorandum Opinion and Order, Doc. # 47, p. 8). The Court found that Shaw's own admissions "strongly undermine[d] its motion" and rejected its argument of being an "innocent purchaser." Id. at pp. 7-8.

In March 2015, this case proceeded to jury trial. For purposes of efficiency, the parties agreed to submit their evidence on the issue of successor liability to the Court in writing after trial because the issue is one for the Court to decide and then, only if the jury first found in favor

of Plaintiff on her claims.[1] The jury did find in Plaintiff's favor on 4 of her 5 claims, and, therefore, Plaintiff hereby requests that judgment be entered against Shaw under the theory of successor liability.[2] Successor liability should be imposed because Shaw is the only Defendant who can grant to Plaintiff reinstatement to the position of Senior Production Coordinator if the Court so orders and it will be the only Defendant who can satisfy any monetary judgment in the event that GateHouse Media, Inc. is unable to do so.

## II. Overview Of Sale To Shaw

In October 2012, Shaw bought Defendant Gatehouse Suburban Newspapers, Inc. ("Suburban") from Defendant GateHouse Media, Inc. ("GateHouse Media") (See Exhibit A, Asset Purchase Agreement, cover page; Exhibit B, Affidavit of Polly Sack ¶ 3). The sale was an asset purchase and all proceeds were paid to and retained by GateHouse Media. (Affidavit of Polly Sack ¶ 5).

## III. Legal Standard For Successor Liability

The theory of successor liability provides an exception to the general rule that a purchaser of assets does not acquire the seller's liability. *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48, 49 (7th Cir. 1995). "[W]hen liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability is applied that is more

---

[1] Plaintiff agreed to submit evidence in writing (rather than by calling witnesses) with the understanding that Defendants would not submit evidence on the issue beyond what is contained in documents and depositions. Plaintiff understands that if Defendants do so, she will be given the opportunity to obtain additional evidence and/or cross examine Defendants' witnesses.
[2] Plaintiff is also filing a motion today for judgment to be entered against all Defendants, including back pay, prejudgment interest, liquidated damages, statutory penalties, reinstatement or front pay, award for adverse tax consequences, emotional distress damages, punitive damages, attorneys' fees and costs.

favorable to plaintiffs than most state-law standards to which the court might otherwise look." *Teed v. Thomas & Betts Power Solutions, L.L.C.,* 711 F.3d 763, 764 (7th Cir. 2013). *See also Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 674 (7th Cir. 2011)(quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994) (explaining that "when a claim arising from a violation of federal rights is involved, the courts allow the plaintiff to go against the purchaser of the violator's business even if it is a true sale . . . ," provided that certain conditions are satisfied).

In *Teed*, the Seventh Circuit explained that the standard for successor liability requires consideration of five factors: (1) whether the successor had notice of the pending lawsuit; (2) whether the predecessor would have been able to provide the relief sought in the lawsuit before the sale; (3) whether the predecessor could have provided relief after the sale; (4) whether the successor can provide the relief sought in the suit; and (5) whether there is continuity between the operations and work force of the predecessor and the successor. 711 F.3d at 765-66. Not all factors need to be met or are weighed equally. 711 F.3d at 766 (noting that the factors do not all line up on one side of the issue in that case).

## IV. Successor Liability Applies To Shaw

The evidence shows that every factor enunciated by the Seventh Circuit is met and that successor liability is warranted. First, there is no question that Shaw had notice of Plaintiff's lawsuit when it purchased Suburban's assets. Defendants admit that the lawsuit was communicated to Shaw prior to its acquisition of Suburban and the Asset Purchase Agreement confirms that. (Defendants' Answer to Plaintiff's Amended Complaint, ¶ 15; <u>Exhibit A</u>, Asset Purchase Agreement, p. 30 and attached Schedule 4.15). This fact alone weighs heavily in favor of holding Shaw liable. *See EEOC v. Northern Star Hospitality, Inc.,* 777 F.3d 898, 902 (7th

3

Cir. 2015) (noting that "[w]here the successor has notice of a predecessor's liability, there is a presumption in favor of finding successor liability." (citations omitted).

Second, Suburban would have been able to provide the relief sought in the lawsuit before the sale (voiding any unfair windfall to Plaintiff). As reflected in the asset purchase agreement and the testimony of Suburban's employees, there is no dispute that Suburban was an active business when Plaintiff filed this lawsuit and could have satisfied any monetary relief or order of reinstatement. (Exhibit A, p. 1; Deposition of Donald Stamper, attached as Exhibit C, pp. 11-13).

Third, Suburban cannot now provide any relief to Plaintiff because it no longer possesses any assets. (Defendants' Statement of Material Facts As To Which There Is No Genuine Issue, Doc. # 37, ¶ 11). Suburban simply no longer exists.[3]

Fourth, Shaw can provide the relief sought by Plaintiff. As an active business, it is able to satisfy any monetary award or order for reinstatement. Further, the Senior Production Coordinator position that Plaintiff was denied (and which instead was given to Lynn Adamo) was one of those positions that went to Shaw when Suburban was sold to Shaw in 2012. If the Court awards reinstatement to that position, only Shaw can satisfy that judgment because the position is no longer with GateHouse Media and the companies have no common ownership or control over each other. (Exhibit B, Affidavit of Polly G. Sack ¶ 10) [4]

---

[3] In light of the jury's finding that GateHouse Media was also Plaintiff's employer, GateHouse Media will be responsible for the monetary judgment entered in Plaintiff's favor. However, judgment should still be entered against Shaw in the event that GateHouse is unable to satisfy the judgment.

[4] Even if the Court does not order reinstatement, successor liability can still apply because not all factors need to be met or are weighed equally. *Teed,* 711 F.3d at 766. Successor liability is also warranted in the event GateHouse Media is unable to satisfy the monetary judgment.

Fifth, there was and has been continuity between the operations and work force of Suburban and Shaw. Apart from Shaw having already conceded that "other than a lack of common ownership with GateHouse Suburban or GateHouse Media, Shaw's operation is a substantial continuation of GateHouse Suburban's prior operation," (Defendants' Memorandum In Support Of Defendant Shaw Suburban Media Group, Inc.'s Motion For Summary Judgment, Doc. # 38, p. 1), the evidence plainly demonstrates as much. Following the sale of Suburban to Shaw, Shaw retained all of Suburban's employees with the exception of 3 high level managers. (Exhibit A, Asset Purchase Agreement, p. 46 and attached Schedules 4.16(b) and 8.1; Stamper Dep. p. 12; Exhibit G, Defendants' Response to Plaintiff's Second Set of Interrogatories, Response to Interrogatory Nos. 18-19 and attached spreadsheets). Most of the employees continued to report to the same managers and although some people were ultimately laid off because of redundancy, employees continued to do the same kind of work they had been doing before the sale, at least for the first couple of months. (Deposition of Shaw (Donald Bricker), attached as Exhibit D, Bricker Dep. pp. 15, 20). Roughly half of the 70 employees who were kept on were still employees with Shaw 1 ½ years after the sale. (Bricker Dep. pp. 20, 48). Further, Shaw, a publisher of newspapers and other media operations like Suburban, has continued to publish the same 22 newspapers that Suburban published before the sale. (Bricker Dep. pp. 8, 11). The basic functions of gathering news and selling advertising continue, the same geographic areas are covered, and all the same papers are still printed. (Bricker Dep. p. 47).

In addition to the foregoing, two individuals who were decision-makers with respect to Plaintiff's termination – Donald Stamper ("Stamper") and Carol Gilbert, both became Shaw

5

employees after the sale. (See Defendants' Answer to Plaintiff's Amended Complaint, ¶ 13). Both testified about the continuity between the operations and the work force following the sale. Stamper became a Shaw employee in approximately October 2012 as a result of Shaw's purchase of Suburban. (Stamper Dep. p. 11; Deposition of Carol Gilbert, attached as Exhibit E, p. 31). Other than the leadership, nothing in operations changed initially from when the company became Shaw. (Stamper Dep. p. 12-13). Later, the only change in operations was when Shaw changed the company that did its printing. (Stamper Dep. p. 13). For the most part, the business operations continued smoothly from Suburban to Shaw; basically they were doing the same thing. (Stamper Dep. pp. 13-14).

Similarly, Hana Zach ("Zach"), an accounting clerk for Suburban who also maintained personnel files, handled FMLA paperwork, and performed local human resources functions, also became an employee of Shaw after it bought Suburban. (Deposition of Hana Zach, attached as Exhibit F, pp. 8, 10-12, 17, 20, 26-27, 42). Following the sale to Shaw, Zach continued to hold the same title, worked in the same department, performed the same job duties, and reported to the same boss she had while employed by Suburban. (Zach Dep. pp. 8, 11-13, 44).

In sum, the evidence shows that the *Teed* factors are satisfied and that judgment should be entered against Shaw under the theory of successor liability.

**V.     There Is No Reason Not To Apply Successor Liability Here**

When Shaw previously filed for summary judgment, it omitted any discussion of the *Teed* factors and instead, grounded its argument on the notion that it was unnecessary to apply successor liability because another viable defendant was present and that doing so would be unfair because it is merely an innocent purchaser. To the extent Shaw advances the same arguments again, they should be rejected.

6

With respect to any argument that Shaw should be dismissed because another Defendant, GateHouse Media, is present, this simply is not a factor the Seventh Circuit considers when determining successor liability and Plaintiff is not aware of any cases where successor liability was denied on this basis. Further, as mentioned above, even if the presence of another viable defendant were somehow part of the successor liability analysis, it is simply incorrect that GateHouse Media can provide "any relief" Plaintiff obtains if Shaw is dismissed. More specifically, if the Court orders Plaintiff to be reinstated to the position of Senior Production Coordinator or its equivalent, only Shaw can satisfy that order because that position now resides with Shaw. A similar issue was presented in *EEOC v. Rockwell International Corp.,* 36 F. Supp. 2d 1056, 1057 (N.D. Ill. 1999)(Gettleman, J.). There, Cambridge argued it was "not needed" as a defendant because Rockwell International Corporation, the defendant who had sold the facility at issue to Cambridge, could provide complete relief to the plaintiff. *Id.* The court, however, noted that the plaintiff requested more than monetary relief; it also sought hiring and retroactive seniority and therefore rejected Cambridge's argument and imposed successor liability.

With respect to any argument that Shaw should not be a party because it is an innocent purchaser who was not involved in any of the illegal conduct, the argument must be rejected for two reasons. First, involvement in the illegal conduct at issue is not one of the factors the Seventh Circuit considers when deciding whether to apply successor liability. *Teed,* 711 F.3d at 765-66. *See also EEOC v. Northern Star Hospitality, Inc.,* 777 F.3d at 903 (rejecting argument that successor liability should not apply because successor company was not in existence at the time the harm occurred).

Second, Shaw is not an "innocent purchaser" that has been blind-sided by this litigation. To the contrary, Shaw was well aware of Plaintiff's lawsuit when it purchased Suburban's assets

7

and protected itself by including an indemnification clause in the purchase agreement. Indeed, Shaw is being indemnified by GateHouse Media for all costs and fees associated with this litigation. (Exhibit B, Affidavit of Polly G. Sack ¶¶ 6-7; Bricker Dep. pp. 43-44) In *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985), the Seventh Circuit noted it would be unfair to impose successor liability when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price, but in this case, no such unfairness exists. As Judge Darrah previously recognized in denying Shaw's motion for summary judgment, Shaw's remedy for successor liability is the one that is already in place – the indemnification agreement it negotiated with GateHouse Media. Shaw's remedy should not be dismissal from the case when through its acquisition of all of Suburban's assets, it could be the only entity available to provide Plaintiff with Court-ordered relief.

**VI.     Conclusion**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Shaw to the same extent it enters judgment against the other Defendants.

Dated: April 29, 2015

                                            Respectfully submitted,

                                            */s/ Jill Weinstein*
                                            PEDERSEN & WEINSTEIN LLP
                                            55 E. Jackson, Suite 510
                                            Chicago, IL  60604
                                            (312) 322-0710
                                            (312) 322-0717 (facsimile)
                                            jweinstein@pwllp.com

## CERTIFICATE OF SERVICE

       I hereby certify that on April 29, 2015, a copy of the foregoing *Plaintiff's Motion For Entry Of Judgment Against Shaw Suburban Media Group, Inc. Under Theory Of Successor Liability* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic case filing system. Parties may access this filing through the Court's system:

Mr. Michael A. Paull
Mr. Brian S. Schwartz
Klein Dub & Holleb
660 La Salle Place, Suite 100
Highland Park, IL 60035
map@labor-law.com
brian.schwartz@labor-law.com

                                     */s/ Jill Weinstein*

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
55 E. Jackson, Suite 510
Chicago, IL 60604
(312) 322-0710
(312) 322-0717 (facsimile)