**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DARLENE SHEILS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 12 CV 2766** |
| **v.** | ) | |
| | ) | **Judge Manish S. Shah** |
| **GATEHOUSE MEDIA, INC.,** | ) | |
| **GATEHOUSE MEDIA SUBURBAN** | ) | |
| **NEWSPAPERS, INC., and SHAW** | ) | |
| **SUBURBAN MEDIA GROUP, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SUPPLEMENTAL MOTION FOR JUDGMENT**
**AS A MATTER OF LAW OR, IN THE ALTERNATIVE,**
**FOR A NEW TRIAL OR REDUCTION OF DAMAGES THROUGH *REMITTITUR***

Defendants (collectively "GateHouse"), by their attorneys, submit their Supplemental

Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ. P. 50(a) and (b), or alternatively,

Motion for New Trial or *remittitur* pursuant to Fed.R.Civ. P. 59.

## I.        INTRODUCTION

The jury issued a verdict in favor of GateHouse on Plaintiff's FMLA interference claim

relating to her return from medical leave in January 2010, and in favor of Plaintiff on Plaintiff's

FMLA retaliation claims, overtime claim, and Illinois common law retaliatory discharge claim

related to her exercise of rights under the Illinois Workers' Compensation Act.  The verdicts and

corresponding damage awards are not, however, reasonably based on the record evidence, are

inconsistent, are not mathematically based on the damages calculations provided to the jury, and

indeed, are against the manifest weight of the evidence.  To supplement the arguments contained

in GateHouse's Motion for Judgment as a Matter of Law with respect to liability (Docket #97),

and its March 30 oral Motion for Judgment as a Matter of Law with respect to damages,

GateHouse specifically notes the following evidentiary deficiencies, and mistakes by the jury based on the record evidence, which warrant entry of judgment as a matter of law, or a new trial or reduction of damages.

*First,* the jury's backpay award on the FMLA retaliation claim for Plaintiff's discharge is not supported by the evidence. The record evidence demonstrates Plaintiff was not able to work upon the April expiration of her FMLA leave. The record evidence also demonstrates GateHouse would have terminated Plaintiff's employment at or shortly after her leave expiration. Consequently, Plaintiff is not entitled to any backpay compensation or benefits.

*Second,* the jury's award bears no relationship to the emotional distress Plaintiff allegedly experienced in light of her minimal admitted "garden variety emotional distress" testimony. Plaintiff was never diagnosed with any depression or anxiety, and admitted she never received treatment by a mental health provider. While the lack of medical evidence does not preclude an award of damages, it should limit the amount of damages she can demonstrate. In light of Plaintiff's testimony with respect to her alleged emotional distress, there is no rational connection between the evidence and the $60,000 award, especially if the backpay damages are disallowed.

*Third,* the jury's $125,000 award of punitive damages is not predicated on testimony of willful and wanton conduct by GateHouse. Accordingly, a punitive damages award in the amount rendered is improper. Without regard to emotional appeals, there is no record evidence of any intentional, reprehensible conduct by Gatehouse. In fact, all of its witnesses testified they unequivocally believed Plaintiff was more qualified than Lynn Adamo or Sue Krisch for the two post reorganization jobs. And, once again, if the jury's backpay damages award is reduced or eliminated, the punitive damages award, an award Plaintiff tied to the actual damage award, is excessive and improper.

*Fourth,* the jury's finding that Plaintiff's January 2010 demotion was in retaliation for her FMLA claims is not supported by the evidence, and is not reasonable in light of the jury's verdict for GateHouse on Plaintiff's FMLA interference claim. As the Court set out in its March 11, 2015 Order (Docket #88), "plaintiff's interference claim and FMLA retaliation claim based on her demotion are largely coextensive, but with only slight differences in the elements." No retaliation could have occurred given the jury's decision no interference occurred.

Finally, the jury's damage awards do not make arithmatic sense based on the evidence. Despite being provided charts and explanations for the calculations for any damage awards, the jury incorrectly rendered damage awards based on something other than the evidence.

## II.    LEGAL STANDARD

GateHouse's Motion for Judgment as a Matter of Law is based on Fed. R. Civ. P. 50(a) and (b). In ruling on this Motion, the Court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law after the jury returns a verdict.

On a Rule 50 motion, "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. BCBS of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000). There must have been more than a mere scintilla of evidence to support the verdict. *Id.*

Rule 59(a) allows the court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The court has broad discretion in determining whether to grant a new trial. *McNabola v. CTA*, 10 F.3d 501, 516 (7th Cir. 1993). The court should grant a new trial under Rule 59 where "the record shows that the jury's verdict, on the record, cries out to be overturned or shocks the conscience." *Latino et al. v. Kaitzer et al.*, 58 F.3d 310, 315 (7th Cir. 1995).

## III.  ARGUMENT

### A.  GateHouse Is Entitled To Judgment As A Matter Of Law On The Backpay Issue Because Plaintiff Was Unable To Return To Work Upon The Expiration Of Her FMLA Leave In April 2011

Despite Plaintiff's belief she could return to some unspecified less demanding work at the end of her FMLA leave without the use of her right arm, the jury's verdict and backpay award in the amount of $62,036.01 is not sufficiently supported by record evidence because GateHouse persuasively met its burden of proof set out in the backpay jury instruction.[1]  The testimony established Plaintiff was not physically capable of returning to work in April 2011 when her FMLA leave expired, and thus would have been discharged.  Plaintiff's mere contrary belief and her questionable introduction of GateHouse's accommodation and light duty policies, her only evidence, do not support backpay.  The jury's findings against GateHouse during the liability phase are not an appropriate reason to ignore the facts and misapply the law to those facts during the damage phase.  A plaintiff's inability to work bars her from recovering backpay for unlawful retaliation under both the FMLA and Illinois laws concerning retaliatory discharge.  *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 333-34 (1st Cir. 2005 (FMLA); *Kirchner v. Sunbelt Rentals*, Inc., 2011 U.S. Dist. LEXIS 36399, *26 & n.2 (N.D.Ill. 2011) (FMLA); *Dale v. S.Cent. Ill. Mass Transit Dist.*, 2014 IL App (5th) 130361, ¶33-34 (5th Dist. 2014) (Illinois law).  The Court should correct the jury's failure to follow the instructions and apply the facts to the law by finding Plaintiff is not entitled to an award of backpay on her FMLA retaliation discharge claim or on the retaliatory discharge claim.

---

[1]     The instruction states: "If defendant has established that plaintiff was unwilling or unable to work after the expiration of her FMLA leave in April 2011 and, as a result, defendant would have discharged her, then you may not award back pay for any time after defendant would have discharged plaintiff."  (Tr.Vol.6; pp.198:23-25; 199:1-2 -- all cited pages are attached).

1.      **Unlike Plaintiff, Caroll Stacklin, The Only Witness Who Saw The Jobs Being Performed, Offered Competent And Uncontroverted Testimony That The Use Of Two Arms Is Required To Perform Krisch And Adamo's Jobs**

Caroll Stacklin competently testified about the physical requirements of the Senior Production Coordinator and Ad Traffic Coordinator positions.  For Sue Krisch's position, Stacklin offered knowledgeable testimony related to the extensive typing and two-arm requirements of the job.  (Tr.Vol.6; pp. 119:23-25; 120:1-9).  As Stacklin explained, Krisch's job was "all typing and writing."  The job required typing on instant messaging, on Skype, to track records in the system, and also writing down extensive numbers and letter codes while communicating in the typed chats to pull up the coded documents. (*Id.*)  Stacklin unequivocally testified nobody could have performed Krisch's job with one hand at an acceptable production level.  (Tr.Vol.6; p. 120:10-12).  Stacklin also offered knowledgeable testimony related to the similar extensive typing and mouse work necessary to perform Lynn Adamo's computerized job. (Tr.Vol.6; p. 121:12-21).  Again, Stacklin specifically testified nobody could perform Adamo's job at an acceptable level using one hand or arm.  (Tr.Vol.6; p. 121:22-24).

In addition to her uncontroverted testimony that Adamo and Krisch's jobs required the use of two hands or arms, Stacklin also testified regarding the rapid pace of those jobs.

> Q. So working - - so the inability to work at a rapid pace without a
> - - would that have disqualified them from - - someone who
> couldn't do a job - - either of those two jobs?
> A. The inability to work at a rapid pace? Yes.
> Q. Yeah.
> A. Yeah.

(Tr.Vol.6; p. 122: 18-23).  Stacklin's uncontroverted testimony about the physical requirements of the Krisch and Adamo positions establishes Plaintiff did not possess the physical capabilities to perform either job at the expiration of her leave in April 2011.

2.     **Caroll Stacklin And Laura Williams Testified Competently And Without Contravention Plaintiff Would Have Been Discharged At The End Of Her FMLA Leave In April, Or Shortly Thereafter, Because Her One-Arm Restriction Precluded Her From Working At GateHouse Until November**

In connection with Caroll Stacklin's competent testimony that the jobs performed by Lynn Adamo and Sue Krisch could not be performed with only one hand or arm, Gatehouse, through Stacklin and Laura Williams, offered further competent and uncontroverted testimony that Plaintiff would have been terminated at the end of her FMLA leave in April 2011, or shortly thereafter. Stacklin clearly testified that while an employee would typically be terminated at the end of the 12-week FMLA leave period if they could not then physically return, they would not be automatically terminated if they asked to extend their unpaid leave by one or two weeks. (Tr.Vol.6; pp. 118:23-25; 119:1-7). However, Stacklin testified such a minimal extension never occurred, and nobody who was unable to return to work after 12 weeks kept their job. (Tr.Vol.6; p. 118:12-14). Stacklin also testified nobody who required nine months of unpaid leave was or ever would be returned to their position after finally being medically released. (Tr.Vol.6; p. 118:15-18). Stacklin's testimony is consistent with GateHouse's FMLA Policy: "Failure to return to work at the expiration of your leave will subject you to voluntary separation of employment for job abandonment. Before making any such decision, GateHouse Media will determine if another leave is required or appropriate." (Joint Ex. 11). In Plaintiff's case, had she not been laid off in February 2011, she would have been discharged in April 2011, or shortly thereafter, due to her physical inability to return to work. Stacklin also testified GateHouse's business and staffing conditions would not have permitted them to maintain Plaintiff's employment from April to November 2011, while she was unable to work. (Tr.Vol.6. p.119:12-22).

Laura Williams testified similarly to Stacklin. Specifically, Williams testified that an employee on FMLA leave who was unable to return to work would be terminated at the end of

the 12-week leave unless an employee requested an additional few weeks of leave beyond the 12-week limit. (Tr.Vol.6; p. 133:10-12; 134:16-22). But, without regard to a few weeks extension for a defined, short time transition period to full duty, both witnesses testified any employee with a long-term need for additional leave, like Plaintiff's seven month extended need, would have been terminated.

Through Stacklin and Williams, the two witnesses competent to testify on the subject, GateHouse explained its FMLA leave policy and clearly established Plaintiff would not have been permitted to take an additional indefinite, eventual seven-month unpaid leave beyond what is required by the FMLA. Such an extended leave has never occurred at GateHouse, and the law does not require such an extended leave. Plaintiff would have been terminated in April 2011 or shortly thereafter based on her physical inability to return to work.

**3. Plaintiff's Trial Testimony Does Not Sufficiently Demonstrate She Could Work At GateHouse Between March 10, 2011 And November 28, 2011 With Only The Use Of Her Non-Dominant Arm**

On January 18, 2011, Plaintiff commenced her 12-week FMLA leave which would expire on April 18. (Tr.Vol.6; pp 54:25; 55;1-2). From March 10 to November 28, 2011, Plaintiff was restricted from working with her right arm. (Tr.Vol.6; p. 59:7-12) (Pl. Ex. 40; Def. Ex. 4-10). Plaintiff is right-hand dominant. (Tr.Vol.6; p. 60:2-4). On February 3, 2011, Plaintiff applied for the open Senior Production Coordinator and Ad Traffic Coordinator positions. (Joint Ex. 6). An essential requirement of both positions is the ability to "work at a rapid pace." (Joint Ex. 1-2). Plaintiff did not receive a job offer for either position and was laid off in February 2011 as part of a reduction in force. None of these facts are in dispute.

When asked at trial about her ability to work with only her left hand prior to November 28, plaintiff testified: "Well, I had been *practicing* on the mouse and typing every day at home,

and I was getting *faster* at it, and I was keeping up with the new programs." (Tr.Vol.6; p. 31:7-11). When asked how her ability to type on a keyboard and use the mouse was affected by her restriction, Plaintiff testified: "Well, I'd be a little slower, uh-huh." (Tr.Vol.6; p. 31:17-19.)

Without regard to her assertions about the intent behind her contrary workers' compensation admissions, Plaintiff's sole counter to Stacklin's testimony was Plaintiff's belief she could have performed Krisch and Adamo's job, albeit more slowly, with only one hand as of April 2011 (Tr.Vol.6; p. 77:20-23). But, Plaintiffs' belief is not persuasive evidence. Significantly, she did not testify she could perform the duties of those positions at the required rapid pace. Nor did Plaintiff add any detail to her bare bones testimony that she was *practicing* and getting *faster* at using the mouse or typing. Other than to simply state *what* she was doing, she did not testify as to *how* she was progressing, including what production level she achieved. So, while Plaintiff may truly have been getting faster, and while she may truly believe she could have physically performed the two new positions with one hand and arm at a lower production level, her beliefs are not persuasive evidence and do not reasonably contradict the testimony from the GateHouse employees with actual knowledge of the positions. This is not a credibility issue or an instance where there are two competing versions of the facts. Rather, on the one hand, Stacklin testified with first-hand knowledge about the job responsibilities and required pace. On the other hand, Plaintiff testified that she *believes* she could have performed some of that work because she was strengthening her weak hand. And, the GateHouse policies specifically support termination at the expiration of the FMLA period if the employee is unable to return. Despite Plaintiff's beliefs, all the competent record evidence demonstrates Plaintiff could not have performed either of the two positions at an acceptable production level using only one hand or arm, and that GateHouse would have terminated her when she could not return.

**4.     Plaintiff Never Saw The Jobs Being Performed By Lynn Adamo And Sue Krisch So She Had Limited Knowledge About Either Of Those Two New Jobs And Could Not Testify Competently As To Her Ability To Perform Them**

Plaintiff's testimony about her perceived ability to return to work without the use of her right arm or hand suffers from another fatal infirmity: Plaintiff was not competent to testify about any of the work done in the Composing Department at GateHouse *after* she went on FMLA leave in January 2011. Plaintiff's Graphic Training and Technical Support job was eliminated along with all the artistic graphic design work (eventually on a national basis). The Senior Production Coordinator and Ad Traffic Coordinator positions were newly created. Work in those jobs did not begin until months after Plaintiff's February layoff. Indeed, Plaintiff admitted she never saw Adamo or Krisch perform their new jobs, or the performance of the seven other new jobs created after the reorganization.

> Q. You were out on leave starting January 18, 2011, correct?
> A. Yes.
> Q. And you didn't return from that leave before your layoff in February, correct?
> A. I didn't - - no.
> Q. Okay. So you never witnessed anybody performing any of the four new jobs in the composing department, did you?
> A. No.
> Q. Or the five new jobs in the ad center, did you?
> A. No.
> Q. Okay. And your old graphic designer job or trainer job was not one of the nine jobs after the reorganization, was it?
> A. No.

(Tr.Vol.6; pp. 80:17-25; 81:1-4).

While Plaintiff testified she saw job descriptions for Adamo and Krisch's new jobs and for the seven other new jobs, Plaintiff admitted she never performed the full range of the responsibilities of the two new positions, nor even ever witnessed the jobs being performed. Plaintiff's testified about her unfamiliarity with the new jobs:

> Q. And you don't know how many of the nine jobs on April 18,
> 2011 required mouse work and typing, do you?
> A. Yes. I could figure that out.
> Q. You never saw them perform those jobs. How do you know?
> A. Well, they gave us a summary of those jobs, the descriptions.
> Q. Did - - all of them require mouse work and typing?
> A. Some of them, yes.
> Q. All of them did?
> A. Maybe, yes.

(Tr.Vol.6; p. 81:5-14). Plaintiff's lack of competent knowledge about the requirements to perform the new jobs further creates an absence of credible record evidence contraverting Stacklin's testimony. Regardless of Plaintiff's self-serving beliefs, the competent record evidence establishes Plaintiff could not physically perform her job or the Krisch and Adamo jobs at a sufficient production level as of or after April 2011. It is not reasonable for the jury to have ruled otherwise.

### 5. The Introduction Of GateHouse's ADA Reasonable Accommodation And Light Duty Policies Prejudicially Confused The Issues Of Whether Plaintiff Was Able To Work At The Expiration Of Her FMLA Leave And Whether GateHouse Would Have Thus Discharged Her

Plaintiff prejudicially injected the Americans with Disabilities Act into this case by offering accommodation evidence when no such duty exists under the FMLA. Plaintiff also wrongly injected the issue of whether GateHouse would have offered her light duty at the end of her FMLA leave under its Workers' Compensation Disability Leave Policy.

Any mention of the ADA should have stopped immediately after Plaintiff testified her case is not an ADA case and admitted there is no duty to accommodate under the FMLA. (Tr.Vol.6; p. 48:13-20).[2] While an employer who discharges an employee unable to return to

---

[2] Prior to commencing testimony on March 30, 2015, the Court entertained the parties' positions with regard to the propriety of permitting evidence of reasonable accommodations and light-duty that may or may not have been available to Plaintiff after April 2011. GateHouse refers the Court to its objections and the Court's decision. (Tr.Vol.6; pp. 2-21).

work at the expiration of the 12-week FMLA leave may have a duty to accommodate that employee, and risks ADA exposure by not considering such an accommodation, that employee's recourse would be a charge of discrimination at the EEOC. As *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 705 (7th Cir. 2011) instructs, such a scenario, however, no longer falls under the FMLA. "When serious medical issues render an employee unable to work for longer than the twelve-week period contemplated under the statute, the FMLA no longer applies." Here, Plaintiff is not an ADA litigant.

Likewise, Plaintiff's testimony about GateHouse's Workers' Compensation Disability Leave Policy (Joint Ex. 11) is far more prejudicial than probative because, like much of her other damage phase testimony, she was not competent to testify about light-duty jobs at Gatehouse after she was laid off. Plaintiff admitted her lack of competence on that subject.

> Q. Now, do you know if there is light-duty work in the department? You don't know if there was light duty work in the department you could perform with one arm, do you?
> A. No.

(Tr.Vol.6; p. 82:1-7). The ADA and light-duty evidence obfuscated the determination the jury was charged to make, and provided much more prejudicial than probative testimony relevant to their findings. The issue of whether Plaintiff was physically incapable of working and therefore would have been terminated when her FMLA expired had nothing to do with ADA accommodation or short-term light duty.

**6.    GateHouse's Light-Duty Policy Does Not Obligate It To Provide Light-Duty And, In Any Event, There Was No Light-Duty Work For Plaintiff In 2011**

Caroll Stacklin competently testified GateHouse's Workers' Compensation Disability Leave Policy does not *obligate* GateHouse to provide light-duty. (Tr.Vol.6; p. 124:1-5). Indeed, page 39 of the Policy sets out only that GateHouse will *attempt* to provide light-duty depending

on the circumstances. (Joint Ex. 11). In addition, Laura Williams testified GateHouse would evaluate light-duty options on an individualized basis, but creating an entirely new job was not contemplated by the Policy. (Tr.Vol.6; p. 135:21-25). Williams also explained the purpose of light-duty is to serve as a bridge to returning to full duty; however, the duration of any light-duty work is relatively short. (Tr.Vol.6; p. 136:4-11). The longest term GateHouse ever permitted an employee to work light-duty was six weeks. (Tr.Vol.6; p. 136:12-14). Without regard to Plaintiff's introduction of the policies and Plaintiff's belief she could have performed a job with lower production expectations using only one hand/arm, no persuasive record testimony exists to counter GateHouse's testimony they would never have permitted an employee to work reduced expectation, light-duty for nine months. (Tr.Vol.6; p. 136:15-19). Moreover, Stacklin testified the pre-press department jobs in 2011 were already considered light-duty work. (Tr.Vol.6; p. 124:7-13). That testimony is consistent with GateHouse's treatment of Plaintiff after her first two surgeries in 2009 when GateHouse did not believe Plaintiff could satisfactorily perform her job with a one-hand work restriction. (Tr.Vol.6; p. 124:14-24). On cross-examination, Stacklin explained the policy language regarding temporary reassignment to lighter physical demands did not apply to Plaintiff because working to a reduced production expectation, or a little bit slower as contemplated by the policy, does not equate to having 50% of your work capacity eliminated on your best day. (Tr.Vol.6; p. 129:15-20). In all respects, Stacklin unequivocally testified Plaintiff would never have qualified for light-duty work at GateHouse with her indefinite, eventual seven-month one-arm restriction. (Tr.Vol.6; pp. 124:25; 125:1-3).

Plaintiff's entire testimony regarding her ability to work with only her weak hand is built on guesswork and opinion. That belief cannot be permitted to negate Stacklin and Williams' competent, comprehensive testimony on the backpay issue. And, regardless of the weight

accorded to Stacklin or Williams' testimony, or even their credibility, Plaintiff is not entitled to recover backpay because she simply did not provide any *evidence* of her ability to perform the work with only one hand. "Although a jury decides questions of credibility, a jury will not be allowed to rest a decision for plaintiff entirely on its disbelief of the denials made by defendant's witnesses." *Miller v. J.M. Jones Co*., 225 Ill.App.3d 799, 587 N.E.2d 654, 660 (1992).

Whether the jury failed to apply the facts to the relevant law because it disliked GateHouse's witnesses, attorneys, or their case; they were confused by the inclusion of the red herring ADA accommodation or light duty testimony; they simply heard enough after six days and a surprising second phase of grueling testimony; or the instructions should have been more clearly related to "Plaintiff's work" or the work associated with the two jobs at issue rather than simply "work," the record evidence did not support damages for back pay. Reasonable persons following the Jury Instruction could not reasonably have reached the verdict the jury issued on backpay. This is not a credibility issue; it is the only reasonable verdict on this issue based on the record testimony. The Court should correct this error by the jury by granting GateHouse's Motion for Judgment as a Matter of Law on this issue, or alternatively, ordering a new trial so this important issue can be properly adjudicated.[3]

**B.      The Jury's $60,000 Emotional Distress Damage Award Is Not Supported By Plaintiff's General Emotional Distress Testimony**

Because Plaintiff was awarded emotional distress damages solely on her state-law retaliatory discharge claim, Illinois law governs review of that award. "[I]n the context of a damages award, [the court] will not upset a jury's verdict unless: (1) the jury ignored a proven

---

[3]      The possibility that it may be too much to ask this or any jury to sit through six days of testimony, and overcome being surprised by a second phase of trial testimony, is not lost on GateHouse. If the instant Motion is granted, GateHouse's plan would be to attempt to resolve the outstanding issues through mediation rather than subjecting the Court, a new jury, the witnesses, and counsel to again endure a six day, two phase trial.

element of the damages; (2) the verdict resulted from passion or prejudice; or (3) the award bore no reasonable relationship to the loss." *Rodriguez v. Northeast Illinois Regional Commuter R.R. Corp.*, 2012 IL App (1st) 102953, ¶ 55, 964 N.E.2d 731.  The Supreme Court of Illinois holds an award of damages "will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the conscience." *Best v. Taylor Mach. Works, et al.*, 179 Ill.2d 367,689 N.E.2d 1057, 1079 (1997).

### 1.   Plaintiff's Testimony About Her Feelings Of Betrayal And Devastation On Her Garden Variety Emotional Distress Claim Does Not Support A $60,000 Award

Plaintiff's testimony regarding her emotional distress consisted of being "disappointed and devastated" when she was demoted and incurred a pay cut in 2010 (Tr.Vol.6; p. 37:3-6); she was "disappointed" (Tr.Vol.6; p. 37:12-15); she was "devastated" and "stunned" when she was informed she did not get either of the jobs she applied for in 2011 (Tr.Vol.6; p. 39:16-21); Plaintiff felt "anxious and betrayed" when she saw the job postings by GateHouse two days after her discharge (Tr.Vol.6; p.40:17-21); over the next several months after her discharge in February 2011, Plaintiff felt "sad and depressed"; in the two years Plaintiff did not have a job after her discharge, she could not finish one book or read the newspaper every day (Tr.Vol.6; p. 41); she could not sit and watch her favorite TV shows, had spasms in her stomach, headaches, could not sleep and grinded her teeth, and she was "less trustful" of people" (Tr.Vol.6; p. 42); she maintains that she "can't stop thinking about them (GateHouse)" (Tr.Vol.6; p. 44); and an after effect of her discharge was that "I didn't go out as much socially." (Tr.Vol.6; p. 43:16-18).

On cross-examination, Plaintiff testified she never saw a medical or mental health professional for emotional distress. (Tr.Vol.6; p. 91:1-4).  In addition, despite testifying she was "depressed," Plaintiff never was clinically diagnosed with depression or any other identifiable condition. (Tr.Vol.6; p. 91:15-16).  Further, Plaintiff's stress level diminished in 2012 after she

obtained a new job. (Tr.Vol.6; p. 93:16-24). And, curiously, although Plaintiff testified on direct-examination she did not go out as much socially, she admitted on cross-examination she was emotionally able to socialize with Carol Gilbert, her former supervisor and the alleged primary discriminator, *after* she was discharged and while she was experiencing feelings of betrayal due to her treatment by GateHouse. (Tr.Vol.6; p. 93:8-16).

2. **In Light Of Plaintiff's Testimony, The Jury's Verdict Is Excessive And Either Warrants A New Trial Or Reduction Through *Remittitur***

The $60,000 awarded to Plaintiff for emotional distress damages is excessive given her general garden variety emotional distress testimony, and seems to have resulted from passion or prejudice rather than from evidence. "'[T]he deference given to the deliberative process is overcome if, after examining the evidence presented at trial, the trial court determines the jury verdict is excessive." *Best*, 689 N.E.2d 1065.

To be sure, losing a job, even in a layoff affecting hundreds of other people, is not an easy experience. Plaintiff has not, however, offered sufficient testimony of the garden variety effects of her experience to warrant such an award. Not watching her favorite TV shows, not reading books, and not going out socially, other than apparently with Carol Gilbert, the woman Plaintiff portrayed as a villain at trial, do not warrant such an award. As the Court explained, the jury was charged with fairly compensating Plaintiff for the injury she suffered, and any award must be based on evidence and not speculation. Without regard to the jury's feelings towards Plaintiff, Plaintiff did not set forth evidence of injuries to support an award of $60,000.

By any measure, the $60,000 emotional distress damage award is not warranted under this factual record. Accordingly, the Court is requested to strike the emotional distress award, set a new trial, or reduce the sum through *remittitur* to an amount that truly reflects the alleged garden variety harm to which Plaintiff testified.

15

**C.** **Plaintiff Is Not Entitled To Punitive Damages Because Illinois Law Requires A Significantly Higher Level Of Culpability And She Did Not Demonstrate Facts Justifying The Imposition Of Punitive Damages**

**1.** **There Is No Evidence Of Fraud, Malice, Or Oppression**

Neither the record evidence nor the applicable legal standards set forth in Illinois cases, entitled Plaintiff to punitive damages. In *Kelsay v. Motorola, Inc*., 74 Ill.2d 172, 384 N.E.2d 353, (1978), the Illinois Supreme Court described the requirements that must be satisfied before punitive damages may be awarded in a workers' compensation retaliatory discharge case. Plaintiff falls far short of meeting those requirements here.

*Kelsay* recognized the validity of punitive damages where the underlying tort was committed "with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to a wanton disregard of the rights of others." *Id*. at 359. The Court cautioned, however, that punitive damages are not favored in Illinois and that Courts must take caution to see that they are not improperly or unwisely awarded. *Id.* at 360.

A jury has the discretion to award punitive damages but such damages are not required upon a finding of liability. *Knecht v. Radiac Abrasives, Inc.*, 219 Ill.App3d 979, 579 N.E.2d 1248, 1250 (1991). An award of punitive damages should be upheld only if the defendant's misconduct is above and beyond the conduct needed for the basis of the action. *Kritzen v. Flender Corp.*, 226 Ill.App.3d 541, 589 N.E.2d 909919 (1992). Illinois law, therefore, draws a clear distinction between the showing needed for liability and the higher level of culpability needed to sustain an award of punitive damages in retaliatory discharge cases. "[W]hile the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly [a question] of law." *Kelsay*, 384 N.E.2d at 359. Punitive damages are not presumed in a retaliatory discharge

action; rather, the circumstances of each case must warrant punitive damages. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill.2d 433, 443-44, 641 N.E.2d 395, 400 (1994).

Plaintiff produced no evidence at trial demonstrating the kind of conduct required by *Kelsay* for punitive damages. The evidence in this case shows that Plaintiff, along with many others in her department at Downers Grove, and nationally, was selected for a layoff after her area of expertise was outsourced. GateHouse's decision makers testified about the selection process, including a comparison of Plaintiff's skills with Lynn Adamo and Sue Krisch's for the two post-reorganization positions. By finding that GateHouse retaliated against Plaintiff for exercising her rights under the Workers' Compensation Act, the jury did not necessarily determine that Plaintiff was more qualified than Adamo or Krisch for jobs similar to those they had been performing for years. Although Plaintiff and the jury believe that GateHouse retaliated against Plaintiff by discharging her in February 2011, nowhere in the record is any evidence of fraud, malice, or oppression in the way GateHouse treated Plaintiff.

While Plaintiff and her counsel obviously swayed the jury into believing GateHouse's business decision to award the new positions to Krisch and Adamo was some sort of nefarious, malicious act by putting an extremely negative spin on facts such as innocent advertising, typical discussions with counsel surrounding a mass layoff, and remarkably claiming the Shaw witnesses' surprising emotional testimony was some sort of malicious effort by GateHouse, the Court will not be as emotionally swayed by these appeals. Accordingly, the punitive damage award should be reversed. The record evidence simply does not support the excessive punitive damages awarded. Whether the jury was swayed by passion or prejudice, or simply failed to apply the record evidence to the punitive damages instruction provided them, this is simply not a

reprehensible punitive damages case, especially not to the extent of the jury's award. The punitive damage award should be reversed, or significantly reduced.

> **2.** **If Some Award Of Punitive Damages Is Upheld, It Should Be Commensurately Reduced If The Court Finds Plaintiff Is Not Owed Backpay**

If the Court is disinclined to bar punitive damages, the award should be reduced if Plaintiff is not entitled to backpay. During her closing argument, Plaintiff's attorney gave the jury specific guidance as to how to award punitive damages. She stated "[w]e think that punitive damages should be at least as high as Darlene's financial losses and emotional harms, if not even higher. Again, it's up to you to decide what amount will send a message." (Tr.Vol.6; p.170:17-20). Added together, the backpay and emotional distress awards roughly equal $125,000. The equivalent $125,000 punitive damage award demonstrates the jury followed Plaintiff's attorney's request. If the backpay award is stricken, GateHouse requests the Court to hold Plaintiff to her counsel's guidance and significantly diminish the award. Such diminishment would also be consistent with the part of the punitive damage jury instruction and relevant case law establishing "[t]he amount of punitive damages must be reasonable and in proportion to the actual and potential harm suffered by the plaintiff. (Tr.Vol.6; p. 202:2-4).

> **D.** **The Jury's Opposite Verdicts With Regard To The FMLA Interference And Retaliation Claims Related To The Demotion In 2010 Are A Peculiar Twist Because The Elements Of Those Claims Are Largely Coextensive**

The jury's finding that Plaintiff's demotion in February 2010 did not interfere with her FMLA rights, but was an act of retaliation under the FMLA is inconsistent. As the Court stated, both the interference and retaliation claims related to Plaintiff's demotion in 2010 are "largely coextensive." There is no discernible reason for the divergent verdicts. It stands to reason that the jury's non-finding of liability on the interference claim warrants judgment as a matter of law to GateHouse on the retaliation claim due to the similarity of those claims.

Moreover, as GateHouse explained in their initial Motion for Judgment as a Matter of Law, the only evidence Plaintiff adduced advancing discrimination on her demotion were Carol Gilbert's alleged references to the comments allegedly made by Caroll Stacklin and Don Stamper about filing her workers' compensation claims. Those comments, even if actually made, do not demonstrate violations of the FMLA because they, by Plaintiff's admission at trial and deposition, were solely related to her workers' compensation claim, not her FMLA leaves. (Sheils Dep.; p. 130). Indeed, both at trial and at deposition, Plaintiff admitted the comments, the alleged "they" comments and any other comments allegedly made by Gilbert, were not in any way related to her FMLA claims, they were all about GateHouse's alleged unhappiness with her filing a worker's compensation claim and hiring a worker's compensation lawyer. The jury obviously disregarded Plaintiff's admissions about this evidence, the only evidence other than mere timing offered in support of the retaliatory demotion claim, to issue its FMLA demotion finding against GateHouse. This failure to follow the instructions and to apply the law to the evidence is another example of juror passion or error which unfairly affected their verdicts.

### E. The Lack Of The Jury's Reliance On The Evidence Is Further Demonstrated By The Lack Of Arithmetic Basis For Their Backpay Award

The parties agreed the jury should determine damages based on Plaintiff's Damages Chart used by both parties during closing arguments. While the parties disagreed whether the jury should use Sue Krisch's Ad Traffic Coordinator Position and the associated $75,159.58 of damages associated with that position, or Lynn Adamo's Senior Production Coordinator Position in Crystal Lake and the $101,669.70 of damages associated with that position as the relevant damages comparison (Tr.Vol.6; pp.153-157), or whether zero damages were appropriate because of Plaintiff's April 2011 inability to return to work (Tr.Vol.6; pp.191), the parties agreed on the component numbers under any of the three scenarios. Yet, the jury utilized none of these figures

to create their verdict. Instead, the jury inexplicably came up with a total of $62,036.91 as the backpay award, an award that was less than the backpay component alone of the lower paying job without any inclusion of the $17,682.38 of lost benefits. Indeed, there is no rational mathematical evidentiary basis for the jury to arrive at their award.

Like the jury's award on the demotion claim and their award of any backpay damages given Plaintiff's inability to work as of April 2011, the jury's calculations on the backpay award were not based on any evidence. Their refusal or failure to render verdicts based on evidence, or to follow the Court's instructions as required by the law, is yet another reason the Court should correct their mistakes by entering judgment as a matter of law, or in the alternative ordering a new trial or reduction of damages through *remittitur*.

## IV.    CONCLUSION

For all the foregoing reasons, GateHouse respectfully requests the Court issue judgment as a matter of law on the backpay issue and other damage issues included herein as the jury's verdicts were not reasonably based on the record evidence. Even if the ADA and light duty policies were properly admitted for a limited purpose, they are background information that establish only GateHouse would consider accommodation or light duty requests on a case-by-case basis. They do not in any way undercut the reliable, first hand GateHouse testimony that Plaintiff would have been let go in April 2011 when she could not satisfactorily perform her job, and no accommodation or light duty would have been available for an indefinite, eventual seven month extended leave. Plaintiff's self-serving beliefs and assertions about what the policies arguably require are not sufficient evidence for a jury to reasonably issue its backpay findings. If judgment as a matter of law is not granted, GateHouse respectfully requests a new trial is warranted on any remaining claims as the jury's verdicts were against the manifest weight of the

evidence, or to reverse or significantly limit the excessive emotional distress and punitive damage awards.

Dated: May 14, 2015                             Respectfully submitted,

                                              s/Michael A. Paull
                                              MICHAEL A. PAULL (ARDC # 6194021)
                                              BRIAN S. SCHWARTZ (ARDC # 6273020)
                                              KLEIN DUB & HOLLEB, LTD.
                                              660 LaSalle Place, Suite 100
                                              Highland Park, Illinois  60035
                                              (847) 681-9100
                                              map@labor-law.com
                                              brian.schwartz@labor-law.com

                                              *Attorneys for GateHouse*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and correct copy of the foregoing Defendants' Supplemental Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Reduction of Damages through *Remittitur* Was Served upon:

>Jill Weinstein
>Erika Pedersen
>PEDERSEN & WEINSTEIN LLP
>55 E. Jackson Boulevard, Suite 510
>Chicago, IL  60604

*via* the CM/ECF Electronic Filing System, on this 14th day of May, 2015.

<u>s/Michael A. Paull</u>